UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| EMCASCO Insurance Company, | Civil File No: 3:22-cv-00443-wmc |
| Plaintiff, | |
| v. | |
| Northern Metal Fab, Inc., and<br>Ellicott Dredges, LLC, | |
| Defendants. | |

**PLAINTIFF EMCASCO INSURANCE COMPANY'S STATEMENT OF PROPOSED FINDINGS OF FACT IN SUPPORT OF ITS MOTION FOR SUMMARY DECLARATORY JUDGMENT**

Plaintiff EMCASCO Insurance Company ("EMCASCO"), by and through the undersigned counsel, for its Proposed Findings of Fact in support of its Motion for Summary Declaratory Judgment, states as follows:

**Parties**

1. Plaintiff EMCASCO is an insurance company organized under the laws of the State of Iowa with its principal place of business in Des Moines, Iowa. *Doc. 1 – Complaint at ¶ 3*.

2. Defendant Northern Metal Fab, Inc. ("NMF") is a corporation organized and existing under the laws of the state of Wisconsin with its principal place of business located at 500 Evergreen Street, Baldwin, Wisconsin. *Doc. 1 – Complaint at ¶ 4; Doc. 5 – Answer of Northern Metal Fab, Inc. and Counterclaim at ¶ 4*.

11154499

3. Defendant Ellicott Dredges, LLC ("Ellicott") is a Maryland limited liability company with its principal place of business in Baltimore, Maryland and a manufacturing facility in New Richmond, Wisconsin. *Doc. 1 – Complaint at ¶ 5; Doc. 6 – Answer of Defendant Ellicott Dredges, LLC at ¶ 5.*

## Jurisdiction and Venue

4. This Court has subject matter jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1332(a)(1), as the amount in controversy exceeds $75,000 and there is diversity of citizenship between Plaintiff and the Defendants. *Doc. 1 – Complaint at ¶¶ 3-5; Doc. 5 - Answer of Northern Metal Fab, Inc. and Counterclaim at ¶ 4; Doc. 6 – Answer of Defendant Ellicott Dredges, LLC at ¶ 5; Affidavit of Stephen M. Warner ("Warner Aff."), Exh. 1 - Defendant Ellicott Dredges, LLC's Answers to Plaintiff's Interrogatories, No. 4.*

5. This Court has personal jurisdiction over Defendant NMF because it is a corporate citizen of Wisconsin. *Doc. 1 – Complaint at ¶ 7; Doc. 5 – Answer of Northern Metal Fab, Inc. and Counterclaim at ¶ 7.*

6. This Court has personal jurisdiction over Defendant Ellicott because it has manufacturing facilities in Wisconsin. *Doc. 1 – Complaint at ¶ 7; Doc. 6 – Answer of Defendant Ellicott Dredges, LLC at ¶ 7.*

7. Venue is proper in this Court because both NMF and Ellicott have manufacturing or production facilities within this District. *Doc. 1 – Complaint at ¶; Doc. 5 – Answer of Northern Metal Fab, Inc. and Counterclaim at ¶ 7; Doc. 6 – Answer of Defendant Ellicott Dredges, LLC at ¶ 7.*

11154499

**Ellicott's Underlying Allegations Against Northern Metal Fab**

8. On or about October 15, 2021, Ellicott commenced an arbitration proceeding against NMF through the American Arbitration Association. *Doc. 1-1: Demand for Arbitration.*

9. The initial Arbitration Complaint asserted claims related to alleged surface defects in two of three tanks NMF had manufactured for a dredging machine (hereinafter "the Southwind Dredge") for Ellicott's customer Southwind Equipment Leasing, LLC. *Doc. 1-2: Arb. Complaint ¶7.*

10. NMF manufactured the tanks for the Southwind Dredge pursuant to a Purchase Order dated April 11, 2018. *Warner Aff. Exh. 2 – Purchase Order.*

11. The Purchase Order called for specific surface preparation prior to painting, including sandblasting, and the use of specified paint. *Warner Aff. Exh. 1 at p. 6 of 15.*

12. NFM delivered three tanks to Ellicott's New Richmond, Wisconsin production facility, with the first tank delivered in October of 2018, the second in December of 2018, and the third in March of 2019. *Doc. 1-2: Arb. Complaint at ¶19.*

13. The underlying Arbitration Complaint alleged that the fully assembled Southwind Dredge incorporating the tanks manufactured by NMF was first placed in the water on or about July 23, 2020, commissioned in August of 2020 and mobilized for use in Blount Island, Florida in September of 2020. *Doc. 1-2: Arb. Comp. at ¶¶23-24.*

14. The underlying Arbitration Complaint also alleged that paint on the NMF manufactured tanks delaminated over the course of September 2020 while the Southwind

3

Dredge was in service. *Doc. 1-2: Arb. Comp. at ¶25; Warner Aff. Exh. 3 - Photos of Southwind Dredge (ELL_000179 – 000186).*

15. The underlying Arbitration Complaint alleged that the paint delamination was caused by NMF's inadequate preparation of the metal tank surface before it was painted, NMF's alleged failure to use primer, and NMF's failure to apply the paint in the proper thickness, all in contravention of painting specifications for the job. *Doc. 1-2: Arb. Comp. at ¶ 25.*

16. Ellicott further alleged that its customer, Southwind, was forced to incur costs of over $200,000 associated with "remedying the paint defect" on the tanks and then commenced suit against Ellicott to recover those costs. *Doc. 1-2: Arb. Comp. at ¶¶ 26, 34-35*.

17. The underlying Arbitration Complaint asserted seven causes of action against NMF, namely Breach of Contract (Count I); Breach of Express Warranty (Count II), Breach of Implied Warranty of Merchantability (Count III), Breach of Implied Warranty of Fitness for a Particular Purpose (Count IV), Negligence (Count V), Negligent Misrepresentation (Count VI), and Fraudulent Misrepresentation (Count VII). *Doc. 1-2: Arb. Comp. at pp. 9-15.*

18. The underlying Arbitration Complaint sought compensatory damages on all causes of action and punitive damages based on the fraudulent misrepresentation claim. *Doc. 1-2: Arb. Comp. at p. 15.*

19. Ellicott seeks breach of contract damages totaling $280,200 from NMF related to the alleged substandard painting and finishing work on the tanks incorporated in

4

the Southwind Dredge, along with punitive damages under a fraud theory. *Warner Aff. Exh. 1 - Defendant Ellicott Dredges, LLC's Answers to Plaintiff's Interrogatories, No. 4.*

20. Ellicott subsequently filed an Amended Complaint in the underlying arbitration proceeding against NMF. *Doc. 1-3: Am. Arb. Comp.*

21. The underlying Amended Complaint did not assert any new causes of action but made additional factual allegations of paint delamination and rust development on tanks NMF had fabricated for two other dredges. *Doc. 1-3: Am. Arb. Comp. at ¶¶ 38-56.*

22. The underlying Amended Complaint alleged that one of the additional sets of tanks produced, painted and finished by NMF was installed in a dredge that Ellicott sold to Gator Dredging ("the Florida Dredge"). *Doc. 1-3: Am. Arb. Comp. at ¶¶ 38-39, 44-46.*

23. The underlying Amended Complaint further alleged that Ellicott was forced to discount its quoted sale price by $60,000 due to paint delamination and rusting on the tanks due to alleged deficient work by NMF. *Doc. 1-3: Am. Arb. Comp. at ¶¶43-46.*

24. Ellicott alleged that paint delamination on the NMF tanks incorporated in the Florida Dredge begin during a six-month period in 2019 when the dredge had been rented to a different customer. *Doc. 1-3: Am. Arb. Comp. at ¶43.*

25. The underlying Amended Complaint further alleged that by the time the Florida Dredge was inspected for potential sale in July 2020, the paint defects had deteriorated further into full-scale rusting on the tanks. *Doc. 1-3: Am. Arb. Comp. at ¶45.*

26. Ellicott seeks damages in the amount of $60,000 from NMF in the underlying arbitration proceeding related to alleged substandard painting and finishing work on the tanks incorporated in the Florida Dredge, along with punitive damages under a fraud

theory.  *Warner Aff. Exh. 1 - Defendant Ellicott Dredges, LLC's Answers to Plaintiff's Interrogatories, No. 4.*

27. The Amended Complaint alleged that NMF fabricated another set of two side tanks for a dredge that Ellicott ultimately sold to Goodloe Dredging in 2019 ("the Goodloe Dredge").  *Doc. 1-3: Am. Arb. Comp. at ¶¶47, 51.*

28. Ellicott alleged that the customer complained in 2021 that the tanks NMF had fabricated had needed repainting because the original paint had all faded way or peeled off.  *Doc. 1-3: Am. Arb. Comp. at ¶52.*

29. Ellicott seeks damages from NMF in an unspecified amount in the underlying arbitration proceeding for alleged reputational consequences with its customer Goodloe. *Doc. 1-3: Am. Arb. Comp. at ¶53; Warner Aff. Exh. 1 - Defendant Ellicott Dredges, LLC's Answers to Plaintiff's Interrogatories, No. 4.*

30. The claim of fraudulent misrepresentation asserted in the Amended Complaint in the underlying arbitration proceeding alleges that NMF made false representations to Ellicott about NMF's expertise and about whether the tank set it manufactured for the Southwind Dredge conformed with the contract and with the applicable specifications. *Doc. 1-3: Am. Arb. Comp. at ¶¶96-97.*

31. Ellicott further alleged that NMF provided Certificates of Authority signed by an authorized NMF representative, and misrepresented its abilities for the purpose of defrauding Ellicott. *Doc. 1-3: Am. Arb. Comp. at ¶¶100-101.*

32. In addition, Ellicott specifically alleged that NMF's misrepresentations were knowing and made with actual malice. *Doc. 1-3: Am. Arb. Comp. at ¶102.*

6

## The EMCASCO Policy Issued To NMF

33.     EMCASCO insures Northern Metal Fab under a general liability policy which was renewed annually from policy inception on May 15, 2018 through May 15, 2021. *Doc. 1-4: Policy at p. 1 (Declarations).*

34.     The policy was placed through Ansay & Associates, LLC via agent Dowd Reliance, which is located in New Richmond, Wisconsin. *Doc. 1-4: Policy at p. 1.*

35.     The policy provides CGL coverage on Form CG 00 01 04 13. *Doc. 1-4: Policy at. p. 14.*

36.     For CGL coverage, "you" and "your" refer to the Named Insured shown in the Declarations, which is Northern Metal Fab. *Doc. 1-4: Policy at pp. 1, 14.*

37.     As relevant to the claims asserted in the underlying arbitration proceeding, the insuring agreement for Section I – Coverages, Coverage A – Bodily Injury And Property Damage Liability provides:

> **COMMERCIAL GENERAL LIABILITY COVERAGE FORM**
> . . .
> **SECTION I – COVERAGES**
>
> **COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY**
> **1. Insuring Agreement**
>    **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of . . . "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages.  However, we will have no duty to defend the insured against any "suit" seeking damages for . . . "property damage" to which this insurance does not apply. . . ..
>       . . .
>    **b.** This insurance applies to . . . "property damage" only if:
>       **(1)** The . . . "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

7

> . . .
> . . .

*Doc. 1-4: Policy at p. 14.*

38. CGL Coverage A is subject to the following Exclusions which have a bearing on coverage in this matter:

> **2. Exclusions**
> This insurance does not apply to:
> . . .
> **k. Damage To Your Product**
> "Property damage" to "your product" arising out of it or any part of it.
> **l. Damage To Your Work**
> "Property damage to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".
>
> This exclusion does not apply if the damages work or the work out of which the damage arises was performed on your behalf by a subcontractor.
> **m. Damage To Impaired Property Or Property Not Physically Injured**
> "Property damage" to "impaired property or property that has not been physically injured, arising out of:
> **(1)** A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or
> **(2)** A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.
> This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has bene put to its intended use.
> . . .

*Doc. 1-4: Policy at p. 15.*

39. A General Liability Elite Extension Endorsement to CGL Coverage on form CG7578 (2-19) modifies Exclusion A.2.a., Expected Or Intended Injury, in relevant part, as follows:

> **GENERAL LIABILITY ELITE EXTENSION**
> . . .

11154499

The COMMERCIAL GENERAL LIABILITY COVERAGE FORM is amended to include the following clarifications and extensions of coverage. The provisions of the Coverage Form apply unless modified by endorsement.

**A. EXPECTED OR INTENDED INJURY**

**Section I – Coverage A**, Exclusion **a.**, is amended as follows:

**a.** . . . "property damage" expected or intended form the standpoint of an insured. . . ..

*Doc. 1-4: Policy at p. 47.*

40. CGL Coverage A is governed by the following relevant definitions:

**SECTION V – DEFINITIONS**

. . .

**8.** "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:
   **a.** It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or
   **b.** You have failed to fulfill the terms of a contract or agreement;
   if such property can be restored to use by the repair, replacement, adjustment or removal of "your product" or "your work" or your fulfilling the terms of the contract or agreement.

**13.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

. . .

**16.** "Products-completed operations hazard":
   **a.** Includes all . . . "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:
      **(1)** Products that are still in your physical possession; or
      **(2)** Work that has not yet been completed or abandoned. . . ..
         . . .
   Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

. . .

**17.** "Property damage" means:
   **a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

   . . .

**21.** "Your product":
   **a.** Means:

>> **(1)** Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:
>> **(a)** You;
>> . . .
>> **(2)** Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.
> **b.** Includes:
>> **(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and
>> . . .
> **22.** "Your work":
>> **a.** Means:
>>> **(1)** Work or operations performed by you or on your behalf; and
>>> **(2)** Materials, parts or equipment furnished in connection with such work or operations.
>> **b.** Includes:
>>> **(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and
>>> . . .

*Doc. 1-4: Policy at pp. 26-29.*

41. There is also a Manufacturer's Errors Or Omissions Endorsement to the CGL coverage part of the policy on Form CG7680 (1-17). *Doc. 1-4: Policy at pp. 54-58.*

42. The insuring agreement for coverage afforded under the Manufacturer's Errors Or Omissions Endorsement provides, in pertinent part:

### MANUFACTURER'S ERRORS OR OMISSIONS

### THIS ENDORSEMENT PROVIDES CLAIMS-MADE COVERAGE. DEFENSE EXPENSES ARE INCLUDED WITHIN THE COVERAGE LIMITS OF INSURANCE.

> This endorsement modifies insurance provided under the following:
>   COMMERCIAL GENERAL LIABILITY COVERAGE FORM
> . . .
> **A.** The following is added to **Section I – Coverages**:
>   **COVERAGE – MANUFACTURER'S ERRORS OR OMISSIONS**
>   **1. Insuring Agreement**

    **a.** We will pay those sums that the insured becomes legally obligated to pay as "damages" because of a "manufacturer's error or omission" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those "damages". However, we will have no duty to defend the insured against any "suit" seeking "damages" to which this insurance does not apply. . . ..
    . . .

*Doc. 1-4: Policy at p. 54.*

    43. Coverage under the Manufacturer's Errors Or Omissions Endorsement is subject to the following relevant exclusions:

    **1. Exclusions**
    For the purposes of this endorsement only, this insurance does not apply to:
    . . .
    **c. Bodily Injury, Property Damage, Personal and Advertising Injury**
    **(1)** "Damages" arising from . . . "property damage" . . ..
    **d. Contractual**
    "Damages" arising from any liability of others assumed by the insured under any contract or agreement, whether oral or in writing. This exclusion does not apply to liability for "damages" that the insured would have in the absence of the contract or agreement.
    . . .
    **h. Intentional Injury**
    "Damages" which may reasonably be expected to result from the intentional or criminal acts of an insured or which is in fact expected or intended by the insured, even if the injury or "damage" is of a different degree or type than actually expected or intended.
    . . .
    **j. Manufacturer's Warranties**
    "Damages" arising from manufacturer's warranties or guarantees, whether express or implied.
    **k. Non-compensatory damages**
    All claims:
    . . .
    **(2)** . . . punitive or exemplary damage or any other type of non-compensatory damages, . . ..

*Doc. 1-4: Policy at p. 55.*

    44.    The following definitions apply only to the Manufacturer's Errors Or Omissions Endorsement:

> **F. Definitions**
> The following definitions apply to coverage provided by this endorsement:
> 1. "Damages" means consequential financial loss sustained by your customer, due to a "manufacturer's error or omission", provided that such a "manufacturer's error or omission" did not arise from any sudden and accidental physical injury to "your product".
>
>    "Damages" does not include:
>    a. The purchase or contract price for "your product".
>    b. Costs and expenses incurred by you or on your behalf to fulfill a warranty, representation, or promise provided with "your product".
>    c. Costs to restore goodwill of your customer.
>
> . . .
> 3. "Manufacturer's Error or Omission" means an insured's negligent manufacture of a tangible product resulting in the failure of that tangible product to perform the function or serve the purpose intended after it left the possession of any insured.
>
> **G.** For the purposes of the coverage provided by this endorsement, Definitions **17.** and **18.** in the **Definitions** Section are replaced by the following:
>
> **17.** "Property damage" means physical injury to tangible property including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it.
> . . .

*Doc. 1-4: Policy at p. 58.*

    45.    EMCASCO is providing a defense to NMF in the underlying arbitration proceeding subject to a reservation of rights. *Warner Aff. Exh. 4 - Reservation of Rights.*

|  |  |
|---|---|
|  | ARTHUR, CHAPMAN, KETTERING, SMETAK & PIKALA, P.A. |
| Dated: March 21, 2023 | /s/ Stephen M. Warner<br>_____<br>Stephen M. Warner (#1047916)<br>500 Young Quinlan Building<br>81 South Ninth Street<br>Minneapolis, MN 55402-3214<br>P: (612) 339-3500<br>F: (612) 339-7655<br>smwarner@ArthurChapman.com<br><br>*Attorneys for Plaintiff*<br>*EMCASCO Insurance Company* |

11154499